Jack Silver, Esquire SBN# 160575
Law Office of Jack Silver
Post Office Box 5469
Santa Rosa, California 95402-5469
Telephone: (707) 528-8275
Facsimile: (707) 528-8675
lhm28843@sbcglobal.net

Attorney for Plaintiff
Northern California River Watch

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHERN CALIFORNIA RIVER WATCH, a non-profit Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SUNCOR HOLDINGS, LLC, TOSCO CORPORATION, KAYO OIL COMPANY, ESTATE OF VICTORIA CHAPPLE, CAROLE M. QUICK, LORRAINE M. MUDGET, CONOCOPHILLIPS COMPANY, and DOES 1 - 10, Inclusive,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL PENALTIES, RESTITUTION AND REMEDIATION**<br><br>[Resource Conservation & Recovery Act (RCRA) 42 U.S.C. § 6901 et seq.] |

NOW COMES Plaintiff, NORTHERN CALIFORNIA RIVER WATCH (hereafter, "RIVER WATCH") by and through its attorneys, and for its Complaint against defendants SUNCOR HOLDINGS, LLC, TOSCO CORPORATION, KAYO OIL COMPANY, ESTATE OF VICTORIA CHAPPLE, CAROLE M. QUICK, LORRAINE M. MUDGET, CONOCOPHILLIPS COMPANY, and DOES 1-10, inclusive (hereafter, "DEFENDANTS"), states as follows:

## I. INTRODUCTION

1.   This is a civil suit brought against DEFENDANTS under the citizen suit enforcement provisions of the Resource Conservation and Recovery Act (hereafter, "RCRA"), 42 U.S.C. § 6901 et seq., and California law governing the Underground Storage of Hazardous Substances: California Heath & Safety Code § 25280 et seq.

1. This Complaint seeks relief for DEFENDANTS' discharge of pollution, petroleum and petroleum constituents from their current or former retail gasoline station facilities (hereafter collectively, "the Facilities"), identified as follows:

   a. 1499 University Ave, Berkeley, California;

   b. 4276 MacArthur Blvd., Oakland, California;

   c. 449 Hegenberger Road, Oakland, California;

   d. 1480 Broadway, Burlingame, California;

   e. 1876 El Camino Real, Burlingame, California;

   f. 1626 El Camino Real, San Mateo, California,

into the groundwater and/or surface waters of the State of California and the United States in violation of the above-enumerated statutes and laws.

2. By this Complaint RIVER WATCH seeks:

   a. To enjoin DEFENDANTS from discharging pollutants from each of the Facilities into the ground and surface waters surrounding and downgradient of the Facilities;

   b. A court order directing DEFENDANTS to comply with the substantive and procedural requirements of the above enumerated statutes and laws;

   c. A court order directing DEFENDANTS to pay civil penalties, or establish remediation projects in lieu of penalties, for violations of the above enumerated statutes and laws; and,

   d. A court order directing DEFENDANTS to reimburse RIVER WATCH for its reasonable costs of suit, including attorney's fees, as allowed under § 7002(e) of RCRA, 42 U.S.C. § 6972(e).

## II.   JURISDICTION

3. This Court has subject matter jurisdiction over all Federal causes of action in this Complaint pursuant to RCRA § 7002(a)&(b), 42 U.S.C. § 6972 (a)&(b) and 28 U.S.C. § 1221 (an action for declaratory and injunctive relief arising under the Constitution and laws of the United States). This Court has supplemental jurisdiction over all State-based causes of action in this Complaint pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy as the Federal causes of action.

4. On or about March 8, 2007, RIVER WATCH provided written notice of DEFENDANTS' violations of RCRA, and of RIVER WATCH's intent to file suit against DEFENDANTS (hereafter, "RCRA Notice") to the Administrator of the United States Environmental Protection Agency (hereafter, "EPA"), the Administrator of the Environmental Protection Agency - Region IX, the Executive Director of the State Water Resources Control Board, the Executive Director of the California Integrated Waste Management Board, and to DEFENDANTS, as required by RCRA. A true and correct copy of the RCRA Notice is attached hereto as Exhibit A and fully incorporated into this Complaint.

5. Members and supporters of RIVER WATCH reside in the vicinity of, derive livelihoods from, own property near, and/or recreate on, in or near, and/or otherwise use, enjoy and benefit from the affected watershed area and associated natural resources into which DEFENDANTS discharges, or by which DEFENDANTS' operations adversely affect members' interests, in violation of the above-enumerated laws or statutes. The health, economic, recreational, aesthetic and environmental interests of RIVER WATCH's members may be, have been, are being, and will continue to be adversely affected by DEFENDANTS' unlawful violations of the above-enumerated laws or statutes. RIVER WATCH contends there exists an injury in fact to its members, causation of that injury by the conduct of DEFENDANTS complained of herein, and a likelihood that the requested relief will specifically redress that injury. RIVER WATCH, through its members, has standing to bring this action. A copy of this Complaint shall be provided to the United States Attorney General and the Administrator of the United States EPA, and the Attorney General of California.

### III. INTRADISTRICT ASSIGNMENT

6. The basis for assignment of this case to the Northern District of California, pursuant to RCRA § 7002(a)&(b), 42 U.S.C. § 6972 (a)&(b), is the Facilities and operations of DEFENDANTS are located in this District, as is the site of pollution at issue.

### IV. PARTIES

7. RIVER WATCH is a 501(c)(3) non-profit public benefit corporation duly organized under the laws of the State of California. Its headquarters are located in Sebastopol, California. RIVER WATCH is dedicated to protecting, enhancing and helping to restore the waters of Northern California, including its drinking water sources, ground water, rivers, creeks and tributaries. Many of RIVER WATCH's

Complaint for Injunctive Relief                                                                          Page 3

members live in areas affected by DEFENDANTS' pollution. Said members have an interest which is or may be adversely affected by DEFENDANTS' violations as set forth in this Complaint. Said members use the affected watershed for domestic water supply, agricultural water supply, recreation, sports, fishing, swimming, hiking, photography, nature walks and the like. Furthermore, the relief sought will specifically redress the injuries in fact, and the likelihood of future injuries and interference with the interests of RIVER WATCH's members.

8.  RIVER WATCH is informed and believes and on said information and belief alleges that defendant SUNCOR HOLDINGS, LLC is a limited liability corporation which is so registered with the State of California, does business in California, and which has its principal office in the State of Delaware.

9.  RIVER WATCH is informed and believes and on said information and belief alleges that defendant KAYO OIL COMPANY is a company which does business in California with a principal office in Houston, Texas.

10. RIVER WATCH is informed and believes and on said information and belief alleges that defendant ESTATE OF VICTORIA CHAPPLE is a fiduciary located in Midland Texas, and owner of the real property on which the Facilities at 1499 University Avenue, Berkeley, California are located.

11. RIVER WATCH is informed and believes and on said information and belief alleges that defendants CAROLE M. QUICK and LORRAINE M. MUDGET are individuals residing in Paso Robles, California, and owners of the real property on which the Facilities at 4276 MacArthur Boulevard, Oakland, California are located.

12. RIVER WATCH is informed and believes and on said information and belief alleges that defendant CONOCOPHILLIPS COMPANY is a corporation which is registered with the State of California, does business in California, and which has its principal office in Houston, Texas.

13. RIVER WATCH is informed and believes and on said information and belief alleges that Defendants DOES 1-10, inclusive, respectively, are persons, partnerships, corporations and entities, who are, or were, responsible for, or in some way contributed to, the violations which are the subject of this Complaint, or are, or were, responsible for the maintenance, supervision, management, operations, or insurance coverage of DEFENDANTS' operations and the Facilities. The names, identities, capacities, and functions of DOES 1-10, inclusive, are presently unknown to RIVER WATCH. RIVER WATCH

shall seek leave of court to amend this Complaint to insert the true names of said DOES when the same have been ascertained.

### V. STATEMENT OF FACTS

14. RIVER WATCH is informed and believes, and on said information and belief alleges that DEFENDANTS have owned, operated and/or leased the Facilities at least since 2001, following a merger with Tosco Refining Company, Inc., the former owner and/or operator of each of these Facilities.

15. DEFENDANTS (and Tosco Refining Company, Inc. before them) have stored large quantities of petroleum products in underground storage tanks (hereafter, "USTs") at the Facilities. In approximately the late 1980's or early 1990's, petroleum contamination was detected in soil and groundwater beneath each of the Facilities. Subsequent investigations indicated that the contamination was attributable to leakage from USTs and piping systems, surface spills and/or poor maintenance or operational practices.

16. Regulatory Agencies have ordered DEFENDANTS to investigate and remediate petroleum contamination at the Facilities following discovery of petroleum releases. DEFENDANTS have conducted some investigative work at the Facilities in response to Agency directives; however, significant levels of petroleum contamination remain in soil and groundwater beneath and adjacent to the Facilities and the Facilities have not been remediated.

17. Regulatory Agencies have designated surface and groundwater in this area of California as capable of supporting domestic supply. Regulatory Agencies have also established Maximum Contaminant Levels ("MCLs") for petroleum constituents in surface and groundwater

18. Benzene and toluene are known carcinogens and/or reproductive toxins, and have been listed chemicals under Proposition 65 since at least 1991. Surface and groundwater at the Facilities are potential sources of drinking water under applicable Regional Water Quality Control Board (Water Quality Control Plans) (aka Basin Plans). In the course of doing business DEFENDANTS have discharged benzene and toluene to surface and groundwater at the Facilities on a daily basis since at least the late 1980's.

19. DEFENDANTS have used and/or stored petroleum at the Facilities in a manner which has allowed significant quantities of hazardous petroleum constituents to be discharged to soil and groundwater beneath the Facilities and beneath adjacent properties.

20. DEFENDANTS have conducted some site investigations and monitoring work at the Facilities, but very little remediation, and the contamination the Facilities remains unabated. To date, the levels of TPHg, TPHd, benzene, toluene, ethylbenzene, xylenes and MTBE remain high above the allowable MCLs and/or Water Quality Objectives ("WQOs") for said constituents, creating an imminent and substantial endangerment to public health and the environment.

21. The discharges by DEFENDANTS as alleged in the RCRA Notice (Exhibit A) have been both knowing and intentional. At the present time and in the past DEFENDANTS have used, stored and sold petroleum hydrocarbon products at the Facilities which are known to contain benzene, toluene, TPHg, TPHd, ethylbenzene, xylenes, and MTBE, and have intended that such products be sold to and used by the public, or used in its own operations. DEFENDANTS (and TOSCO before them) have known of the contamination at some or all of the Facilities since at least the late1980's, and are also aware that failing to remediate the pollution allows the contamination to migrate through soil and groundwater at and adjacent to the Facilities, and to continually contaminate and re-contaminate actual and potential sources of drinking water.

22. Violations of this and other statutes alleged in this Complaint are a major cause of the continuing decline in water quality, and a continuing threat to existing and future drinking water supplies in Northern California. With every discharge, groundwater supplies are contaminated. These discharges can and must be controlled in order for the groundwater supply to be returned as a safe source of drinking water.

## VI. FIRST CLAIM FOR RELIEF

### Violation of RCRA - 42 U.S.C. § 6972(a)(1)(A)

23. RIVER WATCH incorporates the allegations set forth above in paragraphs 1 through 22 and Exhibit A, as though fully set forth herein. RIVER WATCH is informed and believes, and based on such information and belief alleges:

24. RCRA § 7002(a)(1)(A), 42 U.S.C. §6972(a)(1)(A), provides that any person may commence a civil action against any person or governmental entity alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to RCRA. Civil penalties may be assessed against any person or entity in violation of such permits, etc. pursuant to RCRA under the provisions of RCRA, 42 U.S.C. §§ 6928 (a) and (g).

25. The Facilities, DEFENDANTS' current and former UST sites are regulated by appropriate Regional Water Quality Control Boards and/or County Departments of Health.

26. The Regional Water Quality Control Board and/or County Departments of Health have imposed remediation and monitoring requirements to ensure compliance with the RCRA UST program.

27. RIVER WATCH is informed and believes, and thereon alleges, that DEFENDANTS have failed to comply with the statutory and regulatory leak prevention, leak detection, monitoring, and remediation requirements imposed under RCRA and described in the RCRA Notice attached as Exhibit A.

28. The continuing failure by DEFENDANTS to effectively remediate the on-going contamination at the Facilities will irreparably harm RIVER WATCH and its members, for which harm RIVER WATCH and its members have no plain, speedy or adequate remedy at law.

WHEREFORE, RIVER WATCH prays judgment against DEFENDANTS as set forth hereafter.

## VII. SECOND CLAIM FOR RELIEF
### Violation of RCRA - 42 U.S.C. § 6972(a)(1)(B)

29. RIVER WATCH incorporates the allegations set forth above in paragraphs 1 through 28 and Exhibit A as though fully set forth herein. RIVER WATCH is informed and believes, and based on such information and belief alleges:

30. RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), provides that any person may commence a civil action against any person or governmental entity including a past or present generator, transporter, owner or operator of a treatment, storage or disposal facility who has contributed to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or to the environment. Civil penalties may be assessed against any person or entity in violation of this section, under the provisions of RCRA, 42 U.S.C. §§ 6928 (a) and (g). The RCRA UST regulatory program is adopted and implemented in California under the provisions governing the Underground Storage of Hazardous Substances (California Health & Safety Code § 25280 et seq.).

31. DEFENDANTS currently own and operate or have owned and operated the Facilities at which they store or have stored, and transfer or have transferred, gasoline, diesel, fuel oil and mixed oils.

32. The Facilities have or have had USTs which have leaked petroleum chemicals including benzene, toluene, TPHg, TPHd, ethylbenzene, xylenes and MTBE into groundwater; and/or petroleum products and constituents have been washed off the Facilities into nearby surface waters.

33. Petroleum products and constituents are known to be hazardous to the environment, and if released into the environment in sufficient quantity pose an imminent and substantial risk of harm.

34. Chemicals within these petroleum products and constituents such as benzene and toluene are known carcinogens and/or reproductive toxins, and if released into the environment in sufficient quantity pose an imminent and substantial risk to public health and to the environment in general.

35. For purposes of RCRA, petroleum products and their constituents: TPHg, TPHd, benzene, toluene, ethylbenzene, xylenes and MTBE are "solid wastes" and "hazardous wastes" within the meaning of the statute.

36. RIVER WATCH is informed and believes, and thereon alleges, that amounts of petroleum products and their constituents, TPHg, TPHd, benzene, toluene, ethylbenzene, xylenes and MTBE released by DEFENDANTS at the Facilities are in sufficient quantity to pose an imminent and substantial risk to both the environment and to human health.

37. Continuing acts or failure to act by DEFENDANTS to address these violations will irreparably harm RIVER WATCH and its members, for which harm they have no plain, speedy or adequate remedy at law.

WHEREFORE, RIVER WATCH prays judgment against DEFENDANTS as set forth hereafter.

## VIII. RELIEF REQUESTED

NORTHERN CALIFORNIA RIVER WATCH, respectfully requests this Court grant the following relief:

38. Declare DEFENDANTS to have violated and to be in violation of RCRA for discharging petroleum products and constituents from the Facilities which are known carcinogens and/or reproductive toxins in sufficient quantity to pose an imminent and substantial risk to health and to the environment;

39. Enjoin DEFENDANTS from discharging petroleum products and constituents from the Facilities, which petroleum products and constituents pose an imminent and substantial risk to health and the environment;

40. Order DEFENDANTS to comply with the substantive and procedural requirements of RCRA;

41. Order DEFENDANTS to pay civil penalties, pursuant to RCRA provisions, including 42 U.S.C. §§ 6928 (a) and (g) and/or pay for remediation projects to redress harm caused by DEFENDANTS' violations of RCRA. Each of the above-described violations of RCRA subjects the violator to a civil penalties on a per day per violation basis. Civil penalties may be assessed for violations occurring within five (5) years prior to the initiation of a citizen enforcement action;

42. Enter a judgment that DEFENDANTS are required to pay civil penalties and exemplary damages according to proof;

43. Enter such preliminary injunctions, permanent injunctions or other orders pursuant to RCRA requiring DEFENDANTS to enjoin and abate the nuisance resulting from the discharge and release of petroleum products and constituents, and the migration of petroleum products and constituents into soil and groundwater and/or surface waters;

44. Impose injunctive relief requiring DEFENDANTS to immediately investigate, access and categorize the extent of pollution and implement the best available technology to remediate pollution at the Facilities;

45. Impose injunctive relief requiring DEFENDANTS to immediately commence complete remediation of the contamination at and adjacent to the Facilities once the contaminant plumes have been adequately characterized;

46. Award costs (including reasonable attorney, expert, witness, and consultant fees) to RIVER WATCH as authorized by RCRA; and,

47. Award such other relief as this Court may deem appropriate.

DATED: June 15, 2007

_____
JACK SILVER
Attorney for Plaintiff
NORTHERN CALIFORNIA RIVER WATCH